UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 11-30817 |
| THE DOMINION CLUB, L.C. | ) | Chapter 11 |
| | ) | |
|     Debtor. | ) | |
| | ) | |

**AFFIDAVIT OF JAMES A. CROWDER, MANAGER OF THE DOMINION CLUB, L.C. IN SUPPORT OF CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

STATE OF VIRGINIA     )
                              ) ss:
COUNTY OF HENRICO   )

    I, James A. Crowder, of full age, being duly sworn, state that the following is true and correct to the best of my knowledge, information and belief:

    1.    I am a manager of The Dominion Club, L.C. ("**TDC**" or the "**Debtor**"), a Virginia limited liability company. I am authorized to submit this Declaration in support of the Debtor's Chapter 11 petition and the First Day Motions (as defined herein).

    2.    The Dominion Club, Inc., a Virginia corporation was founded in 1992 and was merged into TDC in January 1993. I have served as the manager of TDC for approximately ten years. I have reviewed the Debtor's First Day Motions and am familiar with facts alleged therein and relief requested.

    3.    On January 11, 2011 (the "**Petition Date**"), the Debtor commenced a bankruptcy case by filing a petition for relief in this Court under Chapter 11 of title 11 of United States Code (the "**Bankruptcy Code**"). As explained in more detail below, TDC has commenced this

chapter 11 case in order to restructure its debt so that TDC may continue to operate as a financially viable and healthy club, for its existing and prospective members.

4. I submit this affidavit: (a) to explain to the Court and other interested parties the circumstances that compelled TDC to seek relief under the Bankruptcy Code, and (b) in support of the relief requested in the "first day" motions filed by TDC (the "**First Day Motions**"). I have personal knowledge of the facts, circumstances and other matters set forth in the First Day Motions and in this Declaration or have gained knowledge of such matters from the managers or employees that work for the Debtor in the ordinary course of my responsibilities. If called upon to testify, I could and would testify competently to the facts set forth herein.

5. Part I of this affidavit provides background with respect to the business and assets of TDC and the events leading to the commencement of this case. Part II sets forth relevant facts in support of the First Day Motions.

## I. BACKGROUND

**A. Corporate Structure**

6. The Debtor is a Virginia limited liability company with three members: Harry H. Hunt, III (4.5% ownership), HHHunt Corporation (0.5% ownership), and The Hunt Family Trust II (95% ownership). HHHunt Corporation is a limited partner in Loch Levan Land Limited Partnership ("**Loch Levan**") with a 95% ownership interest. Loch Levan leases to the Debtor the real property used in its operations and has agreed to provide debtor-in-possession financing to the Debtor as detailed in the Debtor's Motion for Entry of an Order Authorizing the Debtor to (A) Obtain Post-Petition Financing and (B) Assume Unexpired Lease filed contemporaneously herewith.

B.  **Capital Structure**

7.  The initial membership plans for TDC included a refundable fee to join the club that was to be repaid over time on a specific schedule as new members joined the club. In May 2001, the membership plan was amended to include a non-refundable fee in addition to a refundable fee. By 2006 most new members were electing to pay the non-refundable fee only. Since the Debtor's inception, refunds totaling nearly $6 million have been paid on schedule to resigned members. Approximately 918 active and resigned members are due refundable fees of $11.6 million pursuant to their membership agreements (the "**Membership Agreements**"), portions of which come due each year.

8.  HHHunt or affiliates financially supported TDC for years, funding operating losses, which accumulated to an amount in excess of $10.6 million in debt which, prior to the Petition Date, HHHunt converted to equity.

C.  **Operations**

9.  The Debtor is a private club located in Henrico County, Virginia on leased land in the Wyndham neighborhood that has successfully operated since August 1992. The Dominion Club opened with 300 members but has grown to 787 active members.

10. The Debtor leases all real property used for club operations from Loch Levan pursuant to that certain lease dated August 1, 1992, as amended and renewed, between The Dominion Club, Inc.[1] and Loch Levan (the "**Lease**") for a current monthly rental rate of $92,700.00. The leased property includes: (1) a 28,000 square foot Clubhouse consisting of the Rotunda special event space, the Grille restaurant, the Golf Pro Shop and Locker Rooms; (2) an

---

[1] The Dominion Club, Inc. was merged into The Dominion Club, L.C. in 1993.

3

adjacent Swim and Racquet Facility including a junior Olympic swimming pool with seasonal casual dining, nine lighted tennis courts including five clay surface courts and four hard surface courts; and (3) a Curtis Strange designed 18-hole Championship Course, which has played host to the PGA Nationwide Tour (formerly the Nike and Buy.com tours) and Celebrity Players Tour.

11. The Debtor's revenues come from membership fees from new members joining the club, monthly dues paid by members, charges for meals and other services provided to members, weddings, banquets, golf outings and other special events (the "**Revenues**").

**C.    Events Leading to Bankruptcy**

12. Beginning in 2007 the economy entered a recession which has continued to impact the economics of golf clubs. Due to the economic downturn and other factors unforeseen at the time the initial membership plans were established, the Debtor has been unable to repay certain refundable fees to current and resigned members when and as due.

13. The Revenues are likely to be sufficient to operate the club, but they are not sufficient to also refund the refundable fee liabilities when and as due pursuant to the Membership Agreements.

14. The Chapter 11 filing will allow TDC to restructure its long term debts represented by the refundable fees. If this is accomplished without impacting the outstanding reputation of TDC or the current membership numbers, then operations will continue to be successful.

**II.    FIRST DAY MOTIONS**

15. Contemporaneously herewith, the Debtor has filed several first day pleadings and proposed orders, each as listed on the attached Exhibit A. I have reviewed each of these motions

4

and forms of proposed orders and the facts set forth therein are true and correct to the best of my knowledge, information and belief, with appropriate reliance on corporate officers and advisors. Moreover, I believe that the relief sought in each of the motions is vital to enable the Debtor to make the transition to chapter 11 with a minimum interruption or loss of value.  In addition to certain administrative motions, the Debtor filed motions for authority to (i) honor certain prepetition employee related claims, (ii) honor certain prepetition tax liabilities, (iii) enter into that certain DIP financing agreement with Loch Levan, (iv) continue its prepetition cash management system, and (v) honor certain event deposit obligations and gift certificates.

      In furtherance of its efforts to maximize the value of the estate, the Debtor respectfully requests that orders granting the relief requested in the first day motions be entered.

Dated: January 11, 2010

                              /s/ James A. Crowder
                              James A. Crowder

/s/ Jennifer A. Kelsey
Notary Public Commission No. 7020270
Commission Expires:  October 31, 2014